**In re TATE.**

**No. 2961.**

District Court of the United States for the District of Columbia.

Jan. 21, 1946.

John P. Mullen, of Washington, D. C., for petitioner.

Edward M. Curran, U. S. Atty., and Ray L. Jenkins, Asst. U. S. Atty., both of Washington, D. C., opposed.

HOLTZOFF, Justice.

Some years ago the petitioner, Edwin F. Tate, was sentenced by this court to imprisonment for an aggregate term of 40 years on conviction of several felonies. On November 2, 1943, after serving more than 16 years of the sentence previously imposed, he was released on parole by the Board of Indeterminate Sentence and Parole of the District of Columbia. One of the conditions of parole was that the petitioner should not leave the District of Columbia, without first obtaining the approval of the Board in writing. On June 13, 1945, the Board issued a warrant for his arrest, after having received reliable information that he had violated this condition. In November 1945, he was apprehended and subsequently removed to the District of Columbia Reformatory at Lorton, Virginia. On December 6, 1945 he was given a hearing before the Board. The hearing resulted in a revocation of his parole.

962

A petition for a writ of habeas corpus was then presented in behalf of the petitioner on the ground that at the hearing before the Board the petitioner had not been accorded the right of counsel or the right to obtain compulsory process for witnesses in his behalf. The court issued the writ.

At the hearing on the return to the writ, it appeared by oral testimony that counsel for Tate had applied to a representative of the Board for leave to appear in the petitioner's behalf at the hearing, but was informed that the Board did not hear counsel or permit counsel to appear at hearings on revocation of parole. An officer of the Board testified that it was the practice of that body not to hear counsel orally, or even to allow counsel to be present at such hearings, but to permit a written statement to be filed. It further appeared that the petitioner's employer requested permission to testify at the hearing as a witness in his behalf, but was informed that the Board did not receive oral testimony.

 On a writ of habeas corpus this court has no jurisdiction to review the action of the Board on the merits, as the granting or revocation of parole is entirely within its sound discretion, Jones v. Welch, App.D.C., 151 F.2d 769. The only issue now presented to this court for decision is whether the petitioner has been deprived of his legal rights by the manner in which the revocation hearing was conducted.

The Indeterminate Sentence and Parole Act of the District of Columbia, D.C.Code, 1940 Ed., Sec. 24—205, provides that if the Board of Indeterminate Sentence and Parole has reliable information that a paroled prisoner has violated his parole, the Board may issue a warrant for his arrest. The warrant is to be executed by apprehending the prisoner and returning him to the institution from which he was paroled, or to any penal or correctional institution designated by the Attorney General of the United States. It is further provided, Sec. 24—206, that after the prisoner is returned to the institution "he shall be given an *opportunity to appear* before said Board of Indeterminate Sentence and Parole, and the said board may then, or at any time in its discretion, revoke the order and terminate such parole or modify the terms and conditions thereof." In case of revocation of parole, the prisoner is required to serve the remainder of the sentence originally imposed, although

the Board may in its discretion subsequently grant a new parole.

 In its ultimate analysis, the question depends on the meaning to be accorded to the following phrase in the statute: "an opportunity to appear." It is the view of this court that the statute necessarily contemplates an effective appearance and not the mere physical presence of the prisoner before the Board. It implies that the prisoner must be given a hearing. It would seem necessarily to follow that if he is entitled to a hearing, he is likewise entitled to be represented by counsel, if he desires such representation; and that he also has the right to present evidence and adduce witnesses. Otherwise, the right to an appearance before the Board may be but a futile gesture. The privilege granted by the statute would be illusory and nugatory. It might as well be contended that compliance with the statute is achieved by bringing the defendant physically into the presence of the Board and then denying him an opportunity to make a statement, but compelling him to remain silent. Yet, it is but one step removed from this seemingly absurd supposition, to refuse to him the privilege of speaking through counsel and requiring him to speak for himself in person, if he is to speak at all.

In Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566, the Supreme Court construed a similar provision of the Federal Probation Act (U.S.Code, title 18, sec. 725, 18 U.S.C.A. § 725) which directs that a probationer who is arrested for a violation of the terms of probation "shall forthwith be taken before the court". The Supreme Court interpreted this direction as comprising a hearing before the court. Mr. Justice Cardozo made the following comments on this point (295 U.S. 490 at pages 492-494, 55 S.Ct. at page 819, 79 L.Ed. 1566):

"In thus holding we do not accept the petitioner's contention that the privilege has a basis in the Constitution, apart from any statute. Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose. Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266. But the power of the lawmakers to dispense with notice or a hearing as part of the procedure of probation does not mean that a like dispensing power, in op-

position to the will of Congress, has been confided to the courts. The privilege is no less real because its source is in the statute rather than in the Fifth Amendment. If the statement of the Congress that the probationer shall be brought before the court is command and not advice, it defines and conditions power. French v. Edwards, 13 Wall. 506, 511, 20 L.Ed. 702. The revocation is invalid unless the command has been obeyed.

"We find in this statute more than directory words of caution, leaving power unaffected. This is so if we consider the words alone, putting aside for the moment the ends and aims to be achieved. The defendant 'shall' be dealt with in a stated way; it is the language of command, a test significant, though not controlling. Richbourg Motor Co. v. United States, 281 U.S. 528, 534, 50 S.Ct. 385, 74 L.Ed. 1016, 73 A. L.R. 1081. Doubt, however, is dispelled when we pass from the words alone to a view of ends and aims. Clearly the end and aim of an appearance before the court must be to enable an accused probationer to explain away the accusation. The charge against him may have been inspired by rumor or mistake or even downright malice. He shall have a chance to say his say before the word of his pursuers is received to his undoing. This does not mean that he may insist upon a trial in any strict or formal sense. Burns v. United States, supra, 287 U.S. 216 at pages 222, 223, 53 S.Ct. 154, 77 L.Ed. 266. It does mean that there shall be an inquiry so fitted in its range to the needs of the occasion as to justify the conclusion that discretion has not been abused by the failure of the inquisitor to carry the probe deeper. Burns v. United States, supra. That much is necessary, or so the Congress must have thought, to protect the individual against malice or oppression. Almost equally it is necessary, if we read aright the thought of Congress, for the good of the probation system with all its hopes of social betterment."

In that case the Supreme Court on a writ of habeas corpus directed the discharge of the prisoner without prejudice to his arrest and commitment as a result of subsequent proceedings conforming to the statute.

Not only does it appear that a correct construction of the phraseology of the statute makes it mandatory for the Board to permit counsel to appear at the revocation hearing and to hear evidence offered in behalf of the prisoner, but also as a practical matter no reason is perceived why counsel should not be heard and testimony should not be received at a revocation hearing. This course would hardly place an undue burden on the Board. If the Board disagrees with representations made by counsel, it can readily decide against his contentions. No harm can accrue to anyone from giving him an opportunity to be heard. These considerations likewise apply to the presentation of evidence. Fairness does not detract from efficiency or interfere with effectiveness. An appearance of just dealing is as indispensable as justice itself.

The progress in the direction of a fair and humane administration of criminal justice has been in large part marked by an extension of the right of counsel. When one delves in Howell's State Trials containing transcripts of proceedings in the Criminal Courts in England, one becomes impressed with the injustice and unfairness of the denial of the right of counsel. Defendants charged with capital offenses, time and time again, pleaded for the right to have their counsel heard, but that privilege was inexorably denied. The founders of our Government were thoroughly aware of the evils and abuses in the administration of criminal justice in England during the pre-Revolutionary period, and insisted on inserting in the Sixth Amendment an express reservation of the right of a defendant in a criminal case to be represented by counsel. In England only about a century ago defendants in felony cases were for the first time accorded the right to be represented by counsel. The Supreme Court, in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357, extended the constitutional right of counsel by construction. It held that during proceedings in court, the defendant is entitled not only to be represented by counsel if he is in a position to retain an attorney, but that in the event he is unable to do so, counsel must be appointed for him to serve without expense to him, unless the defendant waives this right. It seems ironical and anomalous that a parole board, representing in itself one of the most recent and progressive advances in the administration of criminal law should be the last to cling to the outmoded denial of the right of representation by counsel. This is a vestigial relic of the days when a defendant in a criminal case

had no right of counsel, no right to obtain compulsory process to summon his witnesses, no privilege against self-incrimination, no right to testify in his own behalf and no right to a presumption of innocence until proven guilty beyond a reasonable doubt.

The right of counsel is no less important in an administrative hearing on a revocation of parole, than it is in a judicial proceeding. This is well illustrated in the instant case. By the revocation of parole, the defendant becomes liable to imprisonment for an additional period of approximately 24 years. Surely, it is not unreasonable for him to ask for counsel to be heard and his evidence to be received.

It is not intended to indicate that a parolee at a hearing on a revocation of his parole is entitled to a formal trial. As was indicated in Escoe v. Zerbst, supra, a summary and informal hearing meets the statutory requirement. Nevertheless, no matter how summary or informal it may be, it must be a real hearing at which the defendant, may be represented by counsel and at which he is accorded the right to present evidence.

The court does not rest its conclusion on a constitutional basis. The requirements of the Sixth Amendment obviously cannot apply to these proceedings, and a constitutional right to counsel does not exist. The right is purely statutory, inasmuch as it is the view of this court that the words —"opportunity to appear" found in the statute necessarily imply an effective appearance, and an effective appearance in turn embraces the privilege of representation by counsel and the right to present evidence. Inasmuch, however, as the right of counsel is purely statutory and not constitutional, the rule of Johnson v. Zerbst, supra, does not apply and the parolee is not entitled to have counsel assigned to represent him. This court rules merely that if counsel has been retained by him or in his behalf, such counsel must be heard on request; and that further, any evidence that the parolee or his counsel desire to present must be received if admissible under the rules of evidence.

The prisoner is discharged without prejudice to subsequent proceedings for the revocation of his parole in conformity with the statute. The order to be made herein will be stayed for a reasonable time for that purpose.